LUDLOW v. HUDSON RIVER RAILROAD COMPANY.

*Adjoining owners — lateral support — land conveyed for the purpose of taking material therefrom.*

Plaintiff conveyed to a railroad company certain land, not on its line "for material * * for the uses and purposes of said railroad, and for no other· or different purpose." The railroad company, to obtain materials, excavated the land conveyed, thirty feet deep, and plaintiff's adjoining land caved into the excavation. *Held*, that plaintiff was not entitled to lateral support from the land conveyed, and the company was not liable for damages caused by the caving in of plaintiff's land.

APPEAL by defendant from a judgment in favor of plaintiff entered upon the verdict of a jury, and from an order denying a motion for a new trial upon the minutes.

The action was brought by Elizabeth Ludlow against the Hudson River Railroad Company, to recover for damages to the land of plaintiff by the same sliding down and caving in, by reason of an excavation made by defendant. Sufficient facts appear in the opinions.

The case has been twice tried. A judgment of nonsuit was rendered at the first trial, which, on appeal to the general term, was reversed, and a new trial ordered. The decision on that appeal is reported 6 Lans. 128. From the judgment, etc., at the new trial had in pursuance of that decision, this appeal is taken.

*Frank Loomis*, for appellant.

*J. C. Newkirk*, for respondent.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

JAMES, J. This action was brought to recover for damages sustained by the plaintiff by the sliding down of land into an excavation adjoining, made by the defendant, in obtaining materials for the construction of its road-bed. The excavation was made in 1851–2–3, and the sliding down was in 1864. The plaintiff had a verdict and judgment.

Ludlow v. Hudson River Railroad Co.

The principal, and the important, question presented by this case, is as to the plaintiff's right to the lateral support of the land excavated and removed, under the facts of this case.

Previous to February, 1851, the plaintiff owned all the land in question ; in that month she, for a valuable consideration, sold and conveyed to the defendant a strip of land across her farm one hundred feet wide, for a roadway for defendant's railroad, and also another piece of land east of the east line of said roadway, "for *material;*" to have and to hold said parcels of land to said defendant as a corporation, "its successors and assigns, for the uses and purposes of said railroad, and for no other or different purpose."

In 1851 the defendant entered upon said parcels of land and began the construction of its road-bed, and continued until it was finished ; and at the same time, to obtain materials wherewith to construct such road-bed, the defendant excavated and removed the soil from said last-named piece, until the excavation reached the depth of thirty feet, thus weakening the lateral support to adjoining lands of plaintiff to such a degree that the soil slid down into said excavation, as alleged in the complaint.

The question of negligence does not arise on this appeal, because the court instructed the jury "if they found the sliding down of plaintiff's land was occasioned by excavations on, and the removal of the earth from, the parcel sold for materials, the defendant was liable under the law," and the same in substance was repeated, and assented to, by the court, in answer to repeated requests to charge by the counsel for plaintiff.

The purposes for which the defendant desired the land were well known to the plaintiff at the time of executing her deed, and was quite clearly expressed therein, and the presumption is that a price therefor was asked and given commensurate with its value and the consequences likely to follow from its excavation and use for the purposes contemplated.

It is clearly apparent that these parcels of land were of no particular value to the defendant except for railroad purposes, and that the one parcel was only desired for the *material* which might be obtained from it for the purposes of constructing its road-bed ; and, if taken and used for that purpose, it could not longer furnish lateral support to adjoining lands. As the plaintiff owned the entire territory, the part excavated, as well as the part which slid down, and saw fit to sell a portion thereof for removal, with the right to excavate and

remove, it amounted to a legal consent that the lateral support furnished by such piece of land to her other lands adjoining might be withdrawn, and thereby released the grantee and his assigns from any damages which might arise to such adjoining soil by reason of any excavation and removal of soil therefrom. The plaintiff is therefore estopped by her deed from claiming damages. An estoppel arises when one has done some act, or executed and delivered some deed, which precludes him from averring the contrary. The defendant did an act authorized by the deed; an act contemplated and expressed in the deed; and hence the plaintiff cannot complain of, or recover for, damages naturally resulting from a proper exercise of the right authorized.

This parcel of land in the hands of the defendant is not subservient to the obligation of lateral support to adjoining land owned by the plaintiff. The defendant has not a fee-simple, but only a qualified fee; the mere right to excavate and remove earth therefrom for material for its road-bed, terminating with the use and then reverting to the plaintiff — in substance and legal effect a license to excavate and remove.

In principle, this case is like that of *Ryckman* v. *Gillis*, recently decided in the Commission of Appeals.* In that case the defendant

---

* The following is the opinion referred to, which has not before been published:

RYCKMAN v. GILLIS.

THIS is an appeal by the defendant from a judgment of the general term of the Supreme Court in the second department, affirming a judgment entered on the decision of a single judge at special term.

The action was brought to restrain the defendant by injunction from so removing clay and sand from a piece of land on the bank of the Hudson river, in the town of Cornwall, in Orange county, described in the reservation made in the deed from him, hereinafter mentioned, as to cause land of the plaintiff adjoining it to break away and fall down into the excavation made thereby, and also for an account and payment of damages already sustained by her.

The question arose on the construction and effect of the said reservation.

It appeared that the defendant, Stephen C. Gillis, was, on the 1st day of April, 1865, the owner of about twelve acres of land in the said town of Cornwall, and that he conveyed the same to Sarah B. Shutes, by a full covenant warranty deed of that date, and containing, immediately after the description of the premises, a clause in the following terms, viz.: "Reserving to the said Stephen C. Gillis, his heirs and assigns, the right at all times hereafter, so long as the clay and sand may last, or be used for brick-making purposes, the right to enter upon that part of the aforesaid premises which is bounded and described as follows, to wit: " (here follows the description by metes and bounds), "containing one acre and seventy-five hundredths of an acre of land, and to dig and take therefrom the clay and sand that may be found thereon fit for brick-making; such clay and sand is to be taken for no other purpose than for brick-making, and the right to enter upon the aforesaid part of said premises is to be only for the purpose of digging and removing of such clay and sand."

sold a parcel of land, reserving the right to take clay and sand from a portion of it for making brick. Excavations were made, clay and sand removed, and a slide into the excavation resulted, as in this case. The court held that "the doctrine of lateral support, inci-

The said Sarah Shutes, by deed bearing date the 1st day of August, 1867, conveyed to the plaintiff, by a full warranty deed, the same premises, subject to the right of the said Stephen C. Gillis, his heirs and assigns, so reserved to him in and by his deed to Mrs. Shutes as above set forth.

The judge who tried the case found, among other things, that the defendant, after the plaintiff became the owner of the premises, had, under the said reservation, been engaged in excavating and removing sand and clay, fit for brick-making, from the said one and three-quarter acres, and had taken away considerable of such materials for such purpose; that, in doing this, he had to some extent destroyed and removed the lateral support which the soil on the said one and three-quarter acres afforded to the remainder of the plaintiff's lands in their natural state, and which lies southerly and westerly and next adjoining the lands embraced in the said reservation, and that some portions thereof had subsided and fallen into the pits made by the said excavations. He also found that the soil on the said one and three-quarter acres, and on the other part of the said plaintiff's lands immediately adjoining thereto, is of such nature that said adjoining lands will not stand, but will subside and fall away upon said one and three-quarter acres, unless the same is sustained by an embankment of two feet of base for every one foot of perpendicular thereof.

He then found as conclusions of law:

1st. That the defendant has no lawful right, under the aforesaid reservation, to dig or remove the clay and sand that may be found on the said one and three-quarter acres fit for brick-making, so as to destroy the lateral support which the soil thereon affords to the plaintiff's adjoining lands in their natural state, or so as to cause the plaintiff's adjoining lands to subside and fall away.

2d. That in exercising the right under the said reservation to excavate and remove clay and sand from the said one and three-quarter acres, the defendant has the right to excavate and remove the same only to such an extent as shall leave the plaintiff sufficient lateral support to sustain her lands adjoining thereto.

He then found and decided that the plaintiff was entitled to an injunction to secure to her such lateral support, and that she was entitled to recover $1,500 for the damages which she had sustained by the wrongful act of the defendant in depriving her of such support.

A judgment was entered in conformity with that decision, which, on appeal, was affirmed by the general term. The defendant's appeal is from the judgment of affirmance.

*Amasa J. Parker*, for appellant.

*Samuel Hand*, for respondent.

LOTT, Ch. C. The question presented for our decision on this appeal is, whether the defendant, in the exercise of the right reserved to him in and by his deed to Mrs. Shutes, to enter upon a certain and specific portion of the land granted to her, and "to dig and take therefrom the clay and sand that may be found thereon fit for brick-making," without any restriction or qualification in the terms of the reservation, can, as decided by the courts below, excavate and remove the same "only to such an extent as shall leave the plaintiff sufficient lateral support to sustain her lands adjoining thereto." Such is not a proper construction of the reservation. The defendant, in his grant, conveyed to his grantee the title to the whole of the land included in the general description thereof. There was no *exception* from its operation of the one and three-quarters of an acre specifically described and designated in the reserving clause of the deed; but the tenure thereof was only *abridged* to the extent of the right mentioned and specified in that clause.

The legal effect of the deed was the same as if the entire property, without the reserving clause, had been absolutely conveyed to Mrs. Shutes, and she had immediately granted to the defendant the same right as was reserved to him by that clause. There was consequently no severance of the ownership of the land described therein from the residue of the

dent to and affecting adjoining lands owned by different proprietors, did not apply to such case." I repeat, in principle the cases are precisely alike, and both should be decided the same way.

The judgment is reversed and a new trial granted, costs to abide the event.

premises granted. The whole became vested in Mrs. Shutes, and was afterward conveyed by her to the plaintiff, subject only to the rights of the defendant secured to him by the reservation.

The plaintiff and defendant were, therefore, not contiguous owners of different pieces of land. The plaintiff alone was owner in fee of the entire property described in the deed to her; while the defendant had only an incorporeal right to excavate and remove the clay and sand fit for brick-making in the one and three-quarter acres specifically described, to define the extent of the land in which that right could be exercised. It follows, that the doctrine of lateral support and other rights incidental to and affecting lands adjoining and adjacent to each other, owned by different proprietors, has no application to this case.

The opinions of the courts below, both at special term and the general term, based their decisions on the assumption that, as to the clay and sand, the defendant occupied the position of an adjoining proprietor to the plaintiff, and was subject to the rule of the common law that every person must so use his own property as not to do any damage to that of another. They were mistaken as to the nature and character of the defendant's right. As I have above shown, the freehold in the one and three-quarters of an acre was in the plaintiff. It was not divided so as to vest the title to the clay and sand thereon in the defendant absolutely, as a distinct and separate freehold, the plaintiff having the title to the residue. The defendant was the owner only of an incorporeal right to dig for and take away the clay and sand found within the boundaries of the land to which the right extended, for the sole purpose of brick-making, and not the absolute proprietor thereof for all purposes. The ownership of mineral lands is distinguishable from that in this case. In those the surface and the subjacent mines may be and often are owned by different parties, and by separate titles, the division being by a horizontal line. There is a distinct freehold in each of them, and the subjacent lands or mineral strata must be so occupied and used as not to divest or interfere with a reasonable and proper support of the surface lands. Such are the cases, cited by the respondent's counsel, of *Harris* v. *Ryding*, 5 M. & W. 60; *Humphreys* v. *Brogden*, 15 Q. B. 739 ; *Smart* v. *Morton*, 5 Ell. & B. 30; and the case in the House of Lords, of *Buchanan* v. *Andrews*, Law Reports, Appellate Series, Scotch Appeals, of July, 1873, vol. 2, p. 290. The rights of the mineral owners were considered as freehold estates, and not as mere reservations of a right to dig for ores in the land of another.

Assuming, then, that the right of lateral support is not incident to the plaintiff's ownership of the lands outside of the one and three-quarter acres, it remains to be considered whether, under a proper and reasonable construction of the defendant's right as granted or reserved to him, as above stated, he can exercise it within the boundaries of the land described in the reservation to such an extent only as shall leave the plaintiff lateral support to sustain the lands adjoining thereto. There is no express restriction to that effect in the letters of the grant itself; and I find nothing in the deed from which a restriction to that effect can be inferred. The defendant, it must be borne in mind, was the owner of the entire twelve acres when he conveyed the same to Mrs. Shutes. He had been previously engaged in the manufacturing of brick, and for that purpose had removed from time to time such clay and sand as were required by him. He knew, and his grantee must be assumed to have known, not only that there was a quantity of both clay and sand fit for brick-making, but also that the natural and irresistible effect of digging it out and removing it from the land in which it was embedded, was to cause the adjoining land, more or less, to break off and fall into the pit caused by such digging and removal. With such knowledge, the parties agree that the defendant may, notwithstanding his grant of the entire twelve acres, enter upon a specific portion clearly defined by distinct and unmistakable monuments, "and to dig and take away therefrom the clay and sand that may be found thereon fit for brick-making," at all times thereafter, "so long as the clay and sand may last, or be used for brick-making purposes." There is no limitation to a qualification of that right pre-

Ludlow v. Hudson River Railroad Co.

BOARDMAN, J., dissenting. When this action was in this court, on appeal from a judgment dismissing the complaint, a new trial was granted, and it was held and decided that the action was not barred by the statute of limitations; that the doctrine of lateral support, incident to adjoining lands, was applicable; and that the defendant was liable in damages to the plaintiff for the consequences of the excavation made by defendant upon its own lands; and that, even if defendant was not absolutely liable for such damages, it would be, if negligently and unskillfully done; and that such negligence and want of skill should have been submitted to the jury, to be passed upon by it as a question of fact. *Ludlow v. H. R. R. R. Co.*, 6 Lans. 128. Such decision covers all the propositions relied upon by the appellant upon this appeal, except one. Upon the former trial the defendant rested entirely upon the production of plaintiff's deed of the premises (whereon the excavation was made) "for materials," "for the uses and purposes of said railroad, and for no other or different purposes."

Now the defendant has introduced, in addition, certain proceed-

---

scribed or declared, nor is there any thing in the deed to indicate an intention to limit or restrict it. On the contrary, the fair and reasonable inference from the particular designation of the land on which it was to be exercised is, that it was to extend to the whole thereof, irrespective of its effect on the adjoining property; and that the defendant's grantee, being fully aware and cognizant of the injury that might naturally and reasonably be expected to result from its exercise, was willing to bear the loss occasioned thereby. At all events the defendant, as owner, about to part with the title to the property, was at liberty to prescribe the terms and conditions on which he would do it; and his grantee, by acceding to his requirement in that respect, was bound thereby, and must now abide by the consequences resulting therefrom. The intention of the parties is carried out by a *reservation* of the right, and that form of securing it was, I think, adopted with the object of relieving the land designated for its exercise from the burden of supporting that adjoining thereto, to which an *exception* of the land itself from the grant would have subjected it. It is proper to assume that the price paid for the land was fixed with reference to the nature, extent and effect of the right reserved to the defendant; and if the contract, deliberately entered into, was improvident on the part of either party, that fact cannot alter or affect its construction. There is no ambiguity in the terms of the reservation, and there is no reason to believe that the defendant's grantee did not fully understand them, or what was its effect on the grant made to her.

It was said by the learned judge who delivered the opinion of the court at general term, that the deed in question contained a covenant for the quiet enjoyment of the land granted; apparently for the purpose of raising an inference that the right to dig for the clay and soil, so as to affect the adjoining lands, could not have been intended. Such a construction cannot properly be given to that covenant. It applies to the enjoyment of the property conveyed, as qualified or restricted by the reservation, and cannot impair or affect the extent of the right reserved. Entertaining the above views of the plaintiff's rights, my conclusion is, that the judgment rendered by the court at special term, and the affirmance thereof by the general term, were both erroneous. They must, therefore, be reversed, and a new trial ordered, costs to abide the event.

"All concur except JOHNSON, C., who reads for affirmance."

ings, whereby it obtained title to said premises by the right of eminent domain, under the statute for taking lands for railroad purposes. By such proceedings it appears that this piece of land, outside the line of the road, was "needed for material for the construction of said road, and the maintenance thereof," and was appraised and condemned to the use of said railroad.

This court has lately held, that a railroad company cannot acquire title to real estate, without the owner's consent, simply for the purpose of removing materials therefrom for the construction of the road. *Matter of N. Y. & C. R. R. Co.* v. *Gunnison,* 3 N. Y. Sup. 632.

If that decision be sound the defendant acquired no title to the lands outside of the roadway by such proceedings. But in any event the title so acquired did not essentially change the relations of the parties or diminish defendant's duties and obligations.

These considerations would lead to the affirmance of the judgment, without further remark, were we not referred to an opinion of LOTT, C. C., in the case of *Ryckman* v. *Gilles,* lately delivered in the Commission of Appeals. The opinion of the learned judge raises grave doubts of the correctness of this court's decision upon the former appeal. There is, however, this marked distinction between the two cases: In *Ryckman* v. *Gilles,* by the deed, the land was conveyed, and the right reserved to the grantor to enter upon a certain part of the land granted, and "to dig and take therefrom the clay and sand that may be found thereon fit for brick-making."

In the case at bar the plaintiff conveys to defendant, its successors and assigns, the right of way for track, describing it; and adds, "together with a piece for materials," describing the land on which this excavation was made, after which follows the usual clause, with all and singular, etc.; and adds, "to have and to hold the same, with the appurtenances, unto the said party of the second part, its successors and assigns, for the uses and purposes of said railroad, and for no other or different purpose." In the former case the grantor retained no title to the land. If the reservation did not amount to a severance of the clay and sand so as to constitute it personal property, as in the case of growing trees, it was yet only an irrevocable license to enter, dig and carry away. The grantee alone held the title. Hence, the grantor and grantee were not adjoining owners.

But in the present case the defendant has title in the land conveyed to it by plaintiff. While that title remains the plaintiff has no right of entry thereon. Any interference by her with defendant's possession would be a tort, for which trespass would lie.

Concede that defendant's right of use is limited and not absolute. It is a title to land which the law tolerates, and the defendant is the possessor of such title and land.

The doctrine of lateral support can only apply to adjoining owners of land. If such adjoining ownership does not exist the doctrine cannot be applied. It did not exist in *Ryckman* v. *Gilles*, but it does here. The use of the land is restricted to railroad purposes. But does that give to defendant any greater rights of use of the soil for railroad purposes than it would · possess if no restriction were contained in the deed? If it does, then a restriction inserted in a deed, to limit the use, will operate as a grant of a right which a full covenant deed would not give. The precise question having been decided in this court it should be held *res adjudicata*, and it should be left to a higher court to correct our error if it be an error.

For these reasons I think the judgment and order should be affirmed.

*Judgment reversed and new trial ordered.*